IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| RILETIA J. HAWKINS PRAY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. |
| v. | : | 4:22-cv-00198-RSB-CLR |
| | : | |
| WELLS FARGO BANK, N.A., | : | |
| | : | **JURY TRIAL DEMANDED** |
| Defendant. | : | |
| | : | |

## FIRST AMENDED COMPLAINT FOR DAMAGES

1.  Plaintiff, Reletia J. Hawkins Pray (hereinafter "HAWKINS PRAY" or
    "Plaintiff") brings this action against Wells Fargo Bank, N.A.
    ("WELLS FARGO") for violating the Electronic Funds Transfer Act,
    15 U.S.C. §§ 1693 *et seq.* ("EFTA").

2.  In the alternative, Plaintiff brings this action against WELLS FARGO
    pursuant to Article 4A of the Uniform Commercial Code, as enacted
    by the State of Georgia.

3.  In addition, Plaintiff brings this action against WELLS FARGO for
    conversion, breach of fiduciary duty, breach of legal duty, negligence,
    and violations of Georgia's Fair Business Practices Act for WELLS
    FARGO's conduct in refusing to return funds taken from Plaintiff's

account with actual knowledge that such funds were converted from Plaintiff's account without authorization.

## JURISDICTION, VENUE AND PARTIES

4.  Subject matter jurisdiction in this Court is proper pursuant to 15 U.S.C. § 1693m(g) and 28 U.S.C. §§ 1331 & 1337 (federal question jurisdiction).

5.  This Court has supplement jurisdiction under 28 U.S.C. § 1367 of Plaintiff's state law claims as they are so related to Plaintiff's federal question claim that they form part of the same case or controversy.

6.  In the alternative, this Court has diversity jurisdiction under 28 U.S.C. § 1332(a). Plaintiff is a citizen of the State of Georgia. WELLS FARGO is a national banking association located in the State of South Dakota. The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

7.  Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

8.  HAWKINS PRAY is a natural person who resides in this District and is entitled to bring this action here.

9.   WELLS FARGO is a bank chartered under the laws of the United States with its principal office located at 101 N. Phillips Ave., Sioux Falls, SD 57104.

10.  WELLS FARGO is a nationwide provider of banking and financial services and markets its services throughout the country, including the State of Georgia.

11.  WELLS FARGO continually and systematically transacts business within this District, including multiple branch locations and ATMs.

12.  Because it is a national bank, WELLS FARGO's branch locations are treated as if they were the "main office" of WELLS FARGO. 12 U.S.C. § 36(f)(2).

13.  WELLS FARGO is subject to the jurisdiction and venue of this court.

14.  WELLS FARGO may be served by personal service upon any authorized agent at any of its branch locations.

## FACTS COMMON TO ALL CAUSES

15.  WELLS FARGO is a national banking association and a "financial institution" as that term is defined by EFTA. *See* 15 U.S.C § 1693a(9).

16.  HAWKINS PRAY maintained a Wells Fargo Money Market Account ("ACCOUNT") that is the subject of this lawsuit and meets the

definition of "Account" as that term is defined by EFTA. *See* 15 U.S.C.
§ 1693a(2).

17.    HAWKINS PRAY established the ACCOUNT as a savings account
       earmarked for the specific purpose of meeting unexpected bills of
       herself and her family.

18.    On August 20, 2021, HAWKINS PRAY noticed that she had six
       missed calls from telephone number (800) 869-3557, a main customer
       service number for WELLS FARGO.

19.    When HAWKINS PRAY called the number back, she reached a
       WELLS FARGO representative and was informed by the
       representative that an unusual charge of $0.52 was attempted to be
       spent at a record label in Oregon, which she confirmed was not
       authorized by her and must be fraud.

20.    At this point, WELLS FARGO was aware that attempts of fraud had
       been made against HAWKINS PRAY's ACCOUNT.

21.    Later on August 20, 2021, HAWKINS PRAY received another call
       (hereinafter "Fraudulent Call") which showed the same telephone
       number ending in 3557 as the originating caller identification
       number.

22.     During the Fraudulent Call, HAWKINS PRAY spoke with two

        individuals who claimed to be employees of WELLS FARGO.

23.     Each of the two individuals during the Fraudulent Call sent her a text

        authorization for the purported purposes of verifying her identity.

24.     One of the individuals on the Fraudulent Call informed HAWKINS

        PRAY that someone had tried to initiate a transfer of $3,050.50.

25.     The individuals on the Fraudulent Call said that she would receive a

        text message, "Respond yes or no to wire attempt."  She received the

        text message and responded "No," prompting a "Thank you for your

        confirmation case id number #6529870" reply.

26.     While still on the Fraudulent Call, she received another text that read,

        "Fraud protection assist please verify online password for

        disablement via automated text system."

27.     One of the individuals on the Fraudulent Call asked her to text her

        password and type "cancel" after, for which she complied.

28.     One of the individuals also stated during the Fraudulent Call that

        there was an attempted purchase in Columbia, SC of $500 and an

        attempted transfer by an individual named Damian Woods who was

attempting a $10,000.00 transfer to Chase Bank, but the caller insisted that the transactions did not go through.

29.     The individuals on the Fraudulent Call stated that they would be canceling her prior card and sending her a new debit card.

30.     During most of the Fraudulent Call, HAWKINS PRAY was locked out of her online access to her WELLS FARGO accounts.

31.     HAWKINS PRAY had no way to realize that she was not speaking with WELLS FARGO employees because the call came from what appeared to be a recognized WELLS FARGO telephone number which had just contacted her about a separate fraudulent transfer.

32.     Following the Fraudulent Call, access to her online WELLS FARGO accounts had been restored.

33.     Immediately following the Fraudulent Call, she called her husband who informed her that he had received a text message from WELLS FARGO about a $21,500.00 transfer.

34.     At that point, she checked the ACCOUNT online, and only $603 was left in the ACCOUNT. A $21,500.00 fraudulent transfer had taken place without her authorization, knowledge, or consent.

35.   Immediately after speaking with her husband, she called the 3557 number and informed an actual WELLS FARGO employee that an unauthorized and fraudulent transfer had taken $21,500.00 from her ACCOUNT. The WELLS FARGO employee told HAWKINS PRAY that they would initiate a claim which could take up to 10 business days.

36.   After the last call to the 3557 number, still on August 20, 2021, she called (866) 867-5568, which is the number for WELLS FARGO's Fraud Department, and informed them of the fraud as well.

37.   On August 23, 2021, HAWKINS PRAY again called the 5568 number to inform WELLS FARGO that it had charged her a $30 transfer fee for the fraudulent transfer and to dispute the charge.

38.   On August 25, 2021, a mere 5 days later, WELLS FARGO sent HAWKINS PRAY a letter ("August 25 Letter") stating: "We found the wire transfer was requested through an online banking session using your username and password. After reviewing all the information available to us regarding the disputed transaction, we've determined that the transaction was performed by you or someone who had your authorization."

39.    The August 25 Letter provided no further explanation.

40.    The August 25 Letter did not include or reference any documents WELLS FARGO may have used in its "investigation."

41.    The August 25 Letter ignored the exact conduct that HAWKINS PRAY had disputed and articulated to WELLS FARGO employees—criminals used an elaborate scheme to impersonate WELLS FARGO to steal her log-in credentials, logged into her Account, and initiated a fraudulent transfer.

42.    Instead, WELLS FARGO insisted that because her credentials were used, it must have been authorized by HAWKINS PRAY.

43.    WELLS FARGO knew that the transfer was not authorized, but asserted to the contrary in its effort to avoid its legal responsibility to return the funds to HAWKINS PRAY.

44.    Notwithstanding that WELLS FARGO was unwilling to return HAWKINS PRAY's money, WELLS FARGO clearly understood that the transfer was not authorized as it asserted that it attempted to retrieve the money from Chase Bank, the beneficiary bank.

45.    The August 25 Letter states that WELLS FARGO "initiated a wire recall on your behalf to attempt recovery of the funds. Unfortunately,

the beneficiary bank responded that there were no funds available to return. As a result, we are unable to reimburse you and have closed your claim."

46.   Rather than absorb the responsibility for the unauthorized transfer as required by law, WELLS FARGO refused to return the stolen funds.

47.   The August 25 Letter did not explain why neither WELLS FARGO nor Chase Bank had the funds, what happened to the funds, or who ultimately received them.

48.   The August 25 Letter said that her claim had been "closed," which meant WELLS FARGO intended to take no further action, leaving HAWKINS PRAY with virtually the entirety of her savings gone.

49.   HAWKINS PRAY felt like the financial institution that she entrusted to act in good faith with her financial assets had abandoned her and had taken the criminal's side.

50.   On August 26, 2021, WELLS FARGO sent another letter with a separate claim number pertaining to Plaintiff's dispute of the $0.52 transaction that was attempted to be charged prior to the $21,500.00 transfer, stating that the $0.52 had not been charged to her ACCOUNT and that claim was closed.

51.    In other words, WELLS FARGO proved it was capable of doing the right thing and knew how to follow its obligations over $0.52, but then failed when it came to a $21,500.00 transaction that occurred shortly thereafter.

52.    On August 27, 2021, WELLS FARGO, through its "Digital Channels Group," sent a letter stating that it had completed its review of HAWKINS PRAY's claim and that Damian Woods would be removed as a payee "which you reported was created without your permission[,]" an acknowledgment that HAWKINS PRAY had expressed that she did not intend Damian Woods to receive her money as a payee.

53.    On August 31, 2021, WELLS FARGO issued a periodic statement which showed the fraudulent transfer. This prompted another call from HAWKINS PRAY, this time to WELLS FARGO's Claims assistance number, (877) 548-9230, to again protest the fraudulent transfer.

54.    Between August 31, 2021 and September 9, 2021, HAWKINS PRAY called and spent hours on the phone with WELLS FARGO representatives desperately trying and hoping that someone within

the institution would actually listen to her and help her recover the stolen money, to no avail.

55.   On September 10, 2021, HAWKINS PRAY filed a police report which she offered to WELLS FARGO hoping that this would be sufficient for someone to believe her, to take her seriously, and to conduct a real investigation.

56.   Between September 14, 2021 and September 24, 2021, HAWKINS PRAY called WELLS FARGO several more times, spending more time, again trying desperately to reach someone who could assist, including calls to the 5568 and 9230 numbers.

57.   On September 28, 2021, Montressa E, Case Specialist, Enterprise Complaints Management Office for WELLS FARGO sent a letter apologizing that the claim was not re-opened but then stating that "I do not have additional information regarding this denial, for more information please contact our claims department at 1-800-548-9554."

58.   Following the September 28, 2021 letter, HAWKINS PRAY made at least two more calls to WELLS FARGO's "Complaint Specialist" at (844)-819-4748, again to no avail, and without any production of

documents or evidence that WELLS FARGO relied upon in making its determination.

59.     WELLS FARGO did not have a reasonable basis for believing that the transfer was authorized, never engaged in a good faith investigation which would have easily uncovered the error, and knowingly and willfully concluded that no error had occurred as such conclusion could not reasonably be drawn from the evidence available to it.

60.     WELLS FARGO ignored its obligations to investigate, to provide notice of HAWKINS PRAY's rights to documents, and failed to produce the documents when it was requested.

61.     HAWKINS PRAY was particularly susceptible to the harm caused by WELLS FARGO as she has medical ailments, such as Crohn's disease, which not only require financial resources to pay medical bills but are also exacerbated by the kind of stress and anxiety caused by the loss of her entire savings and the inability to access funds that rightly belong to her.

62.     The $21,500.00 that was stolen was critical to HAWKINS PRAY's ability to pay her own bills and care for her parents who depend upon her.

63.    The ACCOUNT was a fund specifically set aside to meet such
obligations.

64.    HAWKINS PRAY cares for her a father who had two strokes and
cannot work, and the lost financial resources has caused her not to be
able to provide the economic support that she had been able to
provide in the past. She worries constantly now if her parents can
stay in their home without her help paying their mortgage.

65.    The stress of losing the entirety of her savings and the attendant
circumstances have caused her Crohn's symptoms to flare up causing
abdominal pain and sickness.

66.    The flare ups from her Crohn's symptoms has further caused her to
miss work making the financial hardship placed on her by the actions
of WELLS FARGO even greater.

67.    HAWKINS PRAY has become so anxious and stressed by having her
savings wiped out that it has resulted in the hair on her head
shedding and falling out.

68.    The actions of WELLS FARGO have caused HAWKINS PRAY to lose
substantial amounts of money as well as severe emotional distress,

extreme anxiety, feelings of hopelessness, depression, worry,

concern, humiliation, and loss of sleep.

69. WELLS FARGO's actions were the direct and proximate cause of the

harm sustained by HAWKINS PRAY.

70. At all times pertinent hereto, the conduct of WELLS FARGO was

intentional, willful, reckless, and in gross disregard for HAWKINS

PRAY's rights and interests under State and Federal law.

71. WELLS FARGO had ample opportunity to correct course and adhere

to its legal obligations to HAWKINS PRAY with more than sufficient

information to determine that the transfer was the result of fraud, yet

WELLS FARGO refused repeatedly with reckless disregard for the

personal and financial well-being of HAWKINS PRAY and the law.

72. HAWKINS PRAY has complied with all conditions precedent to

bringing this action

## CAUSES OF ACTION

## COUNT ONE: ELECTRONIC FUNDS TRANSFER ACT

73. WELLS FARGO is a "financial institution" as that term is defined by

the EFTA. *See* 15 U.S.C. § 1693a(9).

74.   HAWKINS PRAY's Wells Fargo Money Market Account

("ACCOUNT") that is the subject of this lawsuit was an "account" as

defined by the EFTA. *See* 15 U.S.C. § 1693a(2).

75.   The EFTA provides that when a consumer becomes aware that an

error has occurred with their deposit account or "bank account," the

consumer may, within sixty days of the banking statement containing

the error, dispute it to their financial institution.

76.   A timely EFTA dispute from a consumer then requires the financial

institution to conduct an investigation of the dispute and provide

timely notifications.

77.   More specifically, after a consumer dispute, "the financial institution

shall investigate the alleged error, determine whether an error has

occurred, and report or mail the results of such investigation and

determination to the consumer within ten business days." 15 U.S.C. §

1693f(a).

78.   Further, if an error is determined to have occurred, the financial

institution shall, within one business day, correct the error and credit

any interest charged. 15 U.S.C. § 1693f(b).

79.   If the financial institution determines that no error occurred, it must deliver or mail the explanation to the consumer within 3 business days after the conclusion of the investigation. 15 U.S.C. 1693f(d).

80.   However, the consumer is not left simply to rely upon the financial institution's word that no error occurred. Upon request, the financial institution must "promptly deliver or mail to the consumer reproductions *of all documents which the financial institution relied on to conclude that such error did not occur*" and "shall include notice of the right to request reproductions with the explanation of its findings." (*italic* added) 15 U.S.C. § 1693f(d).

81.   "[A]n unauthorized electronic fund transfer" constitutes an error. 15 U.S.C. § 1693f(f).

82.   If a violation has occurred, the consumer is entitled to treble damages where the financial institution:

> . . . (a) did not make a good faith investigation of the alleged error, or (b) did not have a reasonable basis for believing that the consumer's account was not in error; or (2) the financial institution knowingly and willfully concluded that the consumer's account was not in error when such conclusion could not have been drawn from the evidence available to the financial institution at the time of its investigation.

83.   The fraudulent transfer that transferred $21,500.00 from HAWKINS

PRAY's ACCOUNT was an "unauthorized electronic funds transfer"

as defined by the EFTA. *See* 15 U.S.C. § 1693a(12).

84.   The EFTA requires that if, within 60 days of transmitting a banking

statement to a consumer, a financial institution receives oral or

written notification that:

> "(1) sets forth or otherwise enables the financial
> institution to identify the name and account number
> of the consumer;
> (2) indicates the consumer's belief that
> documentation, or, in the case of notification
> pursuant to 1693d(b) of this title, the consumer's
> account, contains an error and the amount of such
> error; and
> (3) sets forth the reasons for the consumer's belief
> (where applicable) that an error has occurred,"
>
> the financial institution shall do the following: 1)
> "investigate the alleged error," 2) determine whether
> an error has occurred, and 3) "report or mail the
> results of such investigation and determination to
> the consumer within ten business days."

85.   HAWKINS PRAY notified WELLS FARGO orally on the same day as

the fraudulent transfer occurred of the error, in fact within minutes.

86.   HAWKINS PRAY continued to notify WELLS FARGO of the error

within the sixty-days following the fraudulent transfer, both before

and after it appeared on a statement, on multiple occasions through various mediums.

87.   HAWKINS PRAY's notification to WELLS FARGO of the fraudulent transfer clearly identified her name and account number, indicated her belief that her ACCOUNT contained an error, and set forth the reasons for her belief as to how and when the error occurred.

88.   Despite HAWKINS PRAY adequately notifying WELLS FARGO pursuant to EFTA of the unauthorized electronic funds transfer that occurred on August 20, 2021, WELLS FARGO failed to adequately investigate the fraudulent transfer, to reasonably determine that an error on HAWKINS PRAY's ACCOUNT had occurred, and to report findings of a reasonable investigation to HAWKINS PRAY in violation of 15 U.S.C. § 1693f(a).

89.   If a financial institution determines that an error has occurred, "it shall promptly . . . correct the error" within one business day. 15 U.S.C. § 1693f(b).

90.   A sufficiently reasonable investigation by WELLS FARGO of the unauthorized electronic funds transfer in the form of the fraudulent transfer would have resulted in a correction of what was clearly an

error; accordingly, WELLS FARGO's failure to correct the error was in violation of 15 U.S.C. § 1693f(b).

91.   Even when a financial institution determines that an error did not occur, the financial institution is still obligated to "upon request of the consumer promptly deliver or mail the consumer to the consumer reproductions of all documents which financial institution relied on to conclude that such error did not occur." 15 U.S.C. § 1693f(d).

92.   Further, if a financial institution determines that no error occurred, in notifying the consumer of such, the "financial institution shall include notice of the right to request reproductions with the explanation of its findings. *Id.*

93.   WELLS FARGO did not provide any notice of HAWKINS PRAY's rights to have access to all of the documents and evidence that WELLS FARGO used in making its determination with respect to the dispute of the $21,500.00 unauthorized transfer, in violation of the EFTA.

94.   The letter WELLS FARGO sent on August 26, 2021 regarding the $0.52 transaction instructed that HAWKINS PRAY could call if she "would like to take advantage of your right to request copies of

available documents we relied upon in making our decision[,]"
thereby acknowledging that HAWKINS PRAY had a right to receive
the documents it used in its determination.

95.    No such instructions appear in the August 25 Letter concerning the
$21,500.00 transaction.

96.    HAWKINS PRAY sought multiple times through various mediums
to obtain whatever documents or evidence WELLS FARGO relied
upon to make the determination that the fraudulent transfer was
somehow not the result of fraud or otherwise in error.

97.    Despite HAWKINS PRAY on multiple occasions requesting the
documents or evidence WELLS FARGO used to determine that the
fraudulent transfer was not in error, WELLS FARGO has failed to
provide the documents upon which it relied in violation of 15 U.S.C.
§ 1693f(d).

98.    WELLS FARGO did not include a notice of HAWKINS PRAY's right
to request reproductions along with the explanation of its alleged
findings in violation of 15 U.S.C. § 1693f(d).

99.    WELLS FARGO's violations of the EFTA entitle HAWKINS PRAY to her actual damages, statutory damages, costs of this action, and reasonable attorney fees. 15 U.S.C. 1693m(a).

100.   Moreover, if a financial institution does not make a good faith investigation of an alleged error, did not have a reasonable basis for believing that the consumer's account was not in error, or the financial institution knowingly and willfully concluded the consumer's account was not in error when such conclusion could not reasonably have been drawn from the evidence available, the consumer shall be entitled to treble the plaintiff's actual damages.  15 U.S.C. § 1693f(e).

101.   It was extraordinarily clear with a modicum of investigation that the transfer was fraudulent and constituted an unauthorized electronic funds transfer based upon:

   a)  A prior unauthorized electronic funds transfer had taken place for $0.52, a very small sum of money, a tactic commonly employed by criminals to verify the account information and ability to access it;

   b)  Immediately after the Fraudulent Call and fraudulent transfer, HAWKINS PRAY notified WELLS FARGO of the transaction

within minutes which would be highly incongruent with the

actions of one who intentionally initiated a transfer or authorized

one;

c)   HAWKINS PRAY well documented the Fraudulent Call that

preceded the fraudulent transfer such that it would have simply

taken a brief review of WELLS FARGO's call history to determine

that it had not made the call documented by HAWKINS PRAY;

d)  WELLS FARGO has never indicated in any way that it believes or

suspects that HAWKINS PRAY was somehow a co-conspirator or

involved in fraud herself;

e)  HAWKINS PRAY filed a police report; and

f)  WELLS FARGO's lack of explanation as to what happened to the

funds following the fraudulent transfer.

102.  WELLS FARGO i) did not provisionally recredit HAWKINS PRAY's

ACCOUNT; ii) did not make a good faith investigation of the error;

iii) did not have a reasonable basis for believing that the Account was

not in error; and iv) knowingly and willfully concluded that the

Account was not in error when such conclusion could not reasonably

have been drawn from the evidence available to WELLS FARGO.

103.   HAWKINS PRAY is entitled to treble the amount of damages

determined under 15 U.S.C. § 1693m(a)(1).  15 U.S.C. § 1693f(e).


## COUNT TWO: ARTICLE 4A, UNIFORM COMMERCIAL CODE

104.   In the alternative, Article 4A of the Uniform Commercial Code

governs all electronic funds transfers that are not covered by the

Electronic Funds Transfer Act. OCGA §§ 11-4A-104 & 108.

105.   Under Article 4A, "[a] payment order received by the receiving bank

is the authorized order of the person identified as sender if that

person authorized the order or is otherwise bound by it under the

law of agency." OCGA § 11-4A-202(a).

106.   Plaintiff did not authorize the fraudulent transfer order.

107.   The fraudster who initiated the transfer order lacked any authority,

actual or apparent, to act as agent of Plaintiff.

108.   WELLS FARGO did not act pursuant to any agreed security

procedure.

109.   In the alternative, any such procedure was not a commercially

reasonable method of providing security against unauthorized

payment orders.

110.   WELLS FARGO did not accept the payment order in good faith.

111.   WELLS FARGO had been informed that a fraudster was attempting to access Plaintiff's account and facilitated the transfer anyway.

112.   WELLS FARGO refused Plaintiff's instruction restricting acceptance of payment orders.

113.   Plaintiff notified WELLS FARGO of the unauthorized transfer attempts both before and immediately after such transfer, and Plaintiff continued frequent disputes and correspondence both within 90 days and afterwards.

114.   Plaintiff is entitled to a full and complete refund of the unauthorized transfer and interest on the refundable amount calculated from the date the bank received payment to the date of the refund. *See* OCGA § 11-4A-204.

115.   WELLS FARGO represented to HAWKINS PRAY that it believed the transfer was authorized when it, in fact, knew the transfer was not authorized.

116.   WELLS FARGO continuously and systematically refused to refund HAWKINS PRAY despite having actual knowledge that HAWKINS PRAY did not authorize the transfer and was entitled to a refund.

117.   WELLS FARGO is aware that fraudulent schemes, such as the one

perpetrated against HAWKINS PRAY, yet refuses refunds for

unauthorized transfers until its customers retain counsel or contact a

regulatory authority.

118.   WELLS FARGO has acted in bad faith, been stubbornly litigious, and

caused Plaintiff unnecessary trouble and expense. Accordingly,

Plaintiff is entitled to the expenses of litigation, including reasonable

attorney fees pursuant to OCGA § 13-6-11.

## COUNT THREE: CONVERSION.

119.   In Georgia, "The owner of personalty is entitled to its possession.

Any deprivation of such possession is a tort for which an action lies."

O.C.G.A. § 51-10-1.

120.   "Conversion consists of an unauthorized assumption and exercise of

the right of ownership over personal property belonging to another,

in hostility to his rights; an act of dominion over the personal

property of another inconsistent with his rights; or an unauthorized

appropriation." (quotation marks omitted) *Maryland Cas. Ins. Co. v.*

*Welchel*, 257 Ga. 259, 261 (1987) *citing Southern Express Co. v. Sinclair*,

130 Ga. 372, 373.' *Wood v Frank Graham Co.*, 91 Ga.App. 621, 622

(1955). Any distinct act of dominion wrongfully asserted over another's property in denial of his right, or inconsistent with it, is a conversion. It is unnecessary to show that the defendant applied it to his own use, if he exercised dominion over it in defiance of the owner's right, or in a manner inconsistent with it. It is in law a conversion whether it be for his own or any other's use. (cit)" (quotations omitted) *Id.*

121. "It is immaterial that such dominion was exercised in good faith, for 'Whoever meddles with another's property, whether as principal or agent, does so at his peril, and it makes no difference that in doing so he acts in good faith. (cit)" *Id.*

122. "In order to establish a claim for conversion, the complaining party must show: (1) title to the property or the right of possession, (2) actual possession in the other party, (3) demand for return of the property, and (4) refusal by the other party to return the property." *Trey Inman & Associates, P.C. v. Bank of Am., N.A.*, 306 Ga.App. 451, 457 (2010) *citing Internal Medicine Alliance v. Budell*, 20 Ga.App. 231, 239 (2008).

123.   HAWKINS PRAY had title to the funds in her ACCOUNT; WELLS

FARGO wrongfully exercised dominion and took actual possession

and control of HAWKINS PRAY's funds by sending them to Chase

Bank via a fraudulently initiated transfer; WELLS FARGO knew that

such transfer was not authorized by HAWKINS PRAY; HAWKINS

PRAY has demanded the return of the funds in her ACCOUNT on

multiple occasions; WELLS FARGO knew that HAWKINS PRAY was

entitled to her funds, and WELLS FARGO steadfastly refused to

return the funds to her ACCOUNT. Accordingly, WELLS FARGO is

liable to HAWKINS PRAY for the conversion of her funds that were

in her ACCOUNT.

124.   For the tort of conversion, WELLS FARGO is liable to HAWKINS

PRAY for the funds it took from her plus her actual, general, special,

direct, and consequential damages in an amount to be determined by

a jury. O.C.G.A. § 51-12-1.

125.   Wells Fargo had at repeated contacts with Plaintiff about the theft

which provided several separate and distinct opportunities for the

bank to return the stolen funds.

126.   Wells Fargo forces its customers who are victims of crime to affirmatively take the action to sue them in order to recover obviously stolen funds that were clearly and demonstratively unauthorized by any reasonable person.

127.   These repeated and systemic failures and inadequacy in procedures and employee training demonstrate aggravating circumstances in which WELLS FARGO has conducted itself in reckless disregard for the personal or financial well-being of HAWKINS PRAY, HAWKINS PRAY is entitled to additional damages to deter WELLS FARGO from repeating the trespass and to compensate her for her wounded feelings in an amount to be determined by a jury. O.C.G.A. § 51-12-5.

128.   WELLS FARGO's actions showed willful misconduct, malice, fraud, wantonness, oppression, and the entire want of care which would raise the presumption of conscious indifference to HAWKINS PRAY's consequences; accordingly, WELLS FARGO is liable for punitive damages in an amount to be determined by a jury. O.C.G.A. § 51-12-5.1.

129.   WELLS FARGO is further liable to HAWKINS PRAY for her

expenses, including the costs of this action and reasonable attorney

fees. O.C.G.A. § 51-12-7.

130.   WELLS FARGO represented to HAWKINS PRAY that it believed the

transfer was authorized when it, in fact, knew the transfer was not

authorized.

131.   WELLS FARGO continuously and systematically refused to refund

HAWKINS PRAY despite having actual knowledge that HAWKINS

PRAY did not authorize the transfer and was entitled to a refund.

132.   WELLS FARGO is aware that fraudulent schemes, such as the one

perpetrated against HAWKINS PRAY, yet refuses refunds for

unauthorized transfers until its customers retain counsel or contact a

regulatory authority.

133.   WELLS FARGO has acted in bad faith, has been stubbornly litigious

and caused the plaintiff unnecessary trouble and expense;

accordingly, HAWKINS PRAY is entitled to recover her expenses of

litigation, including reasonable attorney fees. O.C.G.A. § 13-6-11.

## COUNT FOUR: BREACH OF FIDUCIARY DUTY

134. "Private duties may arise from statute or from relations created by contract, express or implied. The violation of a private duty, accompanied by damage, shall give a right of action." O.C.G.A. § 51-1-8; *see also Northwest Plaza v. Northeast Enterprises*, 305 Ga.App. 182, 191-192 (2010).

135. "[W]hile a tort action cannot be based on the breach of a contractual duty only, it can be based on conduct which, in addition to breaching a duty imposed by contract, also breaches a duty imposed by law." *Wimpy v. Martin*, 356 Ga.App. 55, 56 (2020).

136. The elements for a breach of fiduciary duty consist of "(1) the existence of a fiduciary duty, (2) breach of that duty; and (3) damage proximately caused by the breach." (citations omitted) *Id.*

137. HAWKINS PRAY's agreement with WELLS FARGO that governs the ACCOUNT ("Agreement") states in relevant part, "You'll exercise ordinary care to determine whether a funds transfer from your account was either not authorized or inaccurate. You must notify us if a funds transfer from your account wasn't authorized or is inaccurate. Notify us within 14 days after we notify you that the instruction or order was accepted or your account was debited or

credited for the funds transfer, whichever is earlier, <u>to be entitled to a refund from us</u>."

138.   The Agreement further states that WELLS FARGO will "investigate any reports of unauthorized activity on your account" for which HAWKINS PRAY relied upon that WELLS FARGO would in fact conduct an adequate investigation when an unauthorized fraudulent transfer took place on her ACCOUNT which should have resulted in a refund.

139.   The Agreement makes clear that WELLS FARGO is "responsible for exercising ordinary care."

140.   WELLS FARGO had a duty to exercise ordinary care in the maintenance of HAWKINS PRAY's ACCOUNT, the funds therein, and in investigating and crediting back funds that were stolen as the result of fraud; WELLS FARGO breached its duty to safeguard HAWKINS PRAY's funds or to refund them; and as a direct and proximate result caused HAWKINS PRAY to lose $21,500.00 and the resultant damages arising therefrom; accordingly, WELLS FARGO is liable to HAWKINS PRAY for a breach of fiduciary duty.

141.   For WELLS FARGO's breach of fiduciary duty to HAWKINS PRAY,

WELLS FARGO is liable to HAWKINS PRAY for the funds it took

from her plus her actual, general, special, direct, and consequential

damages in an amount to be determined by a jury. O.C.G.A. § 51-12-

1.

142.   Due to the aggravating circumstances in which WELLS FARGO has

conducted itself in reckless disregard for the personal or financial

well-being of HAWKINS PRAY, HAWKINS PRAY is entitled to

additional damages to deter WELLS FARGO from repeating the

breach and to compensate her for her wounded feelings in an amount

to be determined by a jury. O.C.G.A. § 51-12-5.

143.   WELLS FARGO's actions showed willful misconduct, malice, fraud,

wantonness, oppression, and the entire want of care which would

raise the presumption of conscious indifference to HAWKINS

PRAY's consequences; accordingly, WELLS FARGO is liable for

punitive damages in an amount to be determined by a jury. O.C.G.A.

§ 51-12-5.1.

144.   WELLS FARGO has acted in bad faith, has been stubbornly litigious

and caused the plaintiff unnecessary trouble and expense;

accordingly, HAWKINS PRAY is entitled to recover her expenses of

litigation, including reasonable attorney fees. O.C.G.A. § 13-6-11.

## COUNT FIVE: NEGLIGENCE

145.  In Georgia, the essential elements of negligence are:

> (1) A legal duty to conform to a standard of conduct
> raised by the law for the protection of others against
> unreasonable risks of harm; (2) a breach of this
> standard; (3) a legally attributable causal connection
> between the conduct and the resulting injury, and,
> (4) some loss or damage flowing to the plaintiff's
> legally protected interest as a result of the alleged
> breach of the legal duty.

*Heston v. Lilly*, 248 Ga.App. 856 (2001).

146.  WELLS FARGO had a legal duty to conduct itself in a manner that

does not impose an unreasonable risk of harm to HAWKINS PRAY

from her money being stolen by criminals; WELLS FARGO breached

that legal duty when it allowed the money to be stolen, failed to

conduct an adequate investigation, failed to determine a blatant

error, and failed to credit the money back to her; WELLS FARGO is

the legally attributable cause of this happening to HAWKINS PRAY;

and HAWKINS PRAY suffered at least $21,500.00 in pecuniary

damages alone.

147.   WELLS FARGO's actions not only constitute negligence but gross

negligence expressing a conscious indifference to the consequences to

HAWKINS PRAY and an intentional disregard of her rights,

knowingly and willfully disregarding them. *See Trotter v. Summerour*,

273 Ga.App. 263 (2005)

148.   Due to WELLS FARGO's gross negligence, HAWKINS PRAY is

entitled to recover her actual damages, general damages, punitive

damages, and the expenses of litigation, including reasonable

attorney fees.

149.   WELLS FARGO has acted in bad faith, has been stubbornly litigious

and caused the plaintiff unnecessary trouble and expense;

accordingly, HAWKINS PRAY is entitled to recover her expenses of

litigation, including reasonable attorney fees. O.C.G.A. § 13-6-11.


**COUNT SIX: BREACH OF LEGAL DUTY**

150.   Georgia recognizes a right to recover damages due to a breach of an

otherwise unspecified legal duty, specifically: "When the law

requires a person to perform an act for the benefit of another or to

refrain from doing an act which may injure another, although no

cause of action is given in express terms, the injured party may

recover for the breach of such legal duty if he suffers damages."
O.C.G.A. § 51-1-6.

151.  WELLS FARGO breached its legal duty to prevent criminals from
      stealing HAWKINS PRAY's money from her ACCOUNT, to
      adequately investigate HAWKINS PRAY's claim of fraud, to provide
      required notices, to provide evidence and documents of its
      investigation, and to credit her ACCOUNT when the only possible
      conclusion from a good faith investigation was that the fraudulent
      transfer was not authorized by HAWKINS PRAY which has caused
      her to lose $21,500.00 and suffer other damages.

152.  Due to WELLS FARGO's breach of its legal duty to HAWKINS
      PRAY, notwithstanding any other provision of law, HAWKINS
      PRAY is entitled to recover her actual damages, general damages,
      punitive damages, and expenses of litigation including reasonable
      attorney fees.

153.  WELLS FARGO has acted in bad faith, has been stubbornly litigious
      and caused the plaintiff unnecessary trouble and expense;
      accordingly, HAWKINS PRAY is entitled to recover her expenses of
      litigation, including reasonable attorney fees. O.C.G.A. § 13-6-11.

## JURY TRIAL DEMAND

154.   HAWKINS PRAY demands trial by jury on all issues so triable.

## DOCUMENT PRESERVATION DEMAND

155.   HAWKINS PRAY hereby demands that WELLS FARGO take affirmative steps to preserve all documents, recordings, data, payment logs, emails, wire transfer logs, phone records, dialer records, electronically stored information, and other information or things that relate to HAWKINS PRAY, the allegations and events described herein, any third party associated with such, and any account or number or symbol relating to any of them. These materials are very likely relevant to the litigation of this action.

156.   If WELLS FARGO is aware of any third party who has possession, custody, or control of any such materials, HAWKINS PRAY demands that WELLS FARGO request that such third party also take steps to preserve the requested materials. This demand shall not be deemed to narrow the scope of any independent document preservation duties.

WHEREFORE, HAWKINS PRAY respectfully prays the Court enter judgment in HAWKINS PRAY's favor and against WELLS FARGO, as follows:

a)  That HAWKINS PRAY be awarded actual damages, including without limitation, the $21,500.00 that was stolen and not recredited to her ACCOUNT, plus her actual damages;

b)  That HAWKINS PRAY be awarded treble, exemplary, and punitive damages;

c)  That HAWKINS PRAY be awarded her reasonable attorney fees;

d)  That HAWKINS PRAY be awarded her costs and expenses in the litigation; and

e)  That the Court grant HAWKINS PRAY any such further relief as is just and proper.

Respectfully submitted,

SKAAR & FEAGLE, LLP

By:    /s/ Kris Skaar
       Kris Skaar
       Georgia Bar No. 649610
       kskaar@skaarandfeagle.com
       Justin T. Holcombe
       Georgia Bar No. 552100
       jholcombe@skaarandfeagle.com
       133 Mirramont Lake Drive
       Woodstock, GA 30189
       Tel.:  (770) 427-5600
       Fax.: (404) 601-1855

James M. Feagle
Georgia Bar No. 256916
jfeagle@skaarandfeagle.com
2374 Main Street, Suite B
Tucker, GA 30084
Tel.:  (404) 373-1970
Fax.:  (404) 601-1855

*Attorneys for Plaintiff*